UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERCEDES SANTIAGO,

                Plaintiff,

        -v-

ANDREW SAUL, *Commissioner of Social Security*,

                Defendant.

18-CV-4197 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff Mercedes Santiago, proceeding *pro se*, challenges the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. No. 2.) The Commissioner has filed a motion for judgment on the pleadings (Dkt. No. 13), and Plaintiff has not opposed that motion. For the reasons that follow, the Commissioner's motion for judgment on the pleadings is granted.

**I.    Background**

Plaintiff is a 52-year-old woman who allegedly suffers from bipolar disorder, carpal tunnel symptoms, right eye blindness, insomnia, depression, and various musculoskeletal conditions, including pinched nerves in her left leg and degenerative discs. (Admin. Transcript[1] ("Tr.") at 175–76.) Plaintiff attended John Jay College for approximately a year and half, but dropped out after she had a baby. (Tr. at 47–48.) Plaintiff attended and graduated from the culinary school at Atlantic Technical College in Florida to become a certified chef. (Tr. at 49.)

---

[1] Citations to the Administrative Transcript refer to the consecutively paginated Certified Administrative Record filed under seal at Docket Numbers 9 through 9-2.

1

Plaintiff last worked as a certified chef in a corporate kitchen, a job that she held for a year and a half before she quit in 2012. (Tr. at 49–50.) She quit her job because she could not "handle it" and her medication "was getting to [her]" such that she could not "do the work properly." (Tr. at 50.)

On July 25, 2013, Plaintiff filed applications with the Social Security Administration for DIB and SSI, alleging that she had become disabled on October 17, 2012. (Tr. at 15.) Her claims were initially denied on October 28, 2013, prompting Plaintiff to file a request on November 15, 2013 for a hearing before an Administrative Law Judge ("ALJ"). (*Id*.) Plaintiff appeared for her hearing without counsel on May 15, 2015. (Tr. at 35, 39.) At the hearing, Plaintiff testified regarding her limitations, stating that she had no strength in her right hand, that she received three surgeries in her right hand—at least two of which were aimed at redressing her carpal tunnel syndrome, and that she was unable to sit or stand for lengthy periods of time due to past back surgery. (Tr. at 53–54.) Plaintiff also reported that she began suffering from mental health issues, for which she began taking Prozac, after her mother passed away in 2000. (Tr. at 59–60.) Plaintiff claimed that her mental health further deteriorated after her husband passed away in 2008. (Tr. at 60.) Plaintiff stated that she was "in psych" six times in the year after her husband passed away. (Tr. at 62.) Plaintiff also testified that she had fallen and was using a walker. (Tr. at 63.) At the end of the hearing, the ALJ informed Plaintiff that another hearing would likely be necessary because medical records were outstanding and the ALJ would probably require expert testimony. (Tr. at 69.)

The second hearing was held on November 18, 2015, during which Plaintiff was represented by counsel. (Tr. at 107–09.) Plaintiff testified again as to her physical impairments, including carpal tunnel syndrome and herniated discs in her back. (Tr. at 114–15.) She also

2

testified to receiving pain management medications, including injections into her hips, receiving electric shock treatment for her back, and attending physical therapy. (Tr. at 115.) Plaintiff noted that she could not sit for more than 15 minutes at a time due to back pain and leg numbness and that she required a walker due to the numbness. (Tr. at 116–18.) Plaintiff also reported having previously experienced suicidal ideation and having been hospitalized in connection with a drug overdose. (Tr. at 122–23.) Plaintiff stated that she was seeing a psychiatrist for her bipolar disorder and depression and taking medication for these conditions as well as her anxiety. (Tr. at 126.)

A third hearing was held on March 27, 2017, where vocational expert ("VE") Christine DiTrinco testified. (Tr. 72–106.) Plaintiff was absent for the hearing, but her counsel appeared on her behalf. (Tr. at 74.) The VE testified that Plaintiff's previous work would be classified under the U.S. Department of Labor's *Dictionary of Occupational Titles* as "Cook Helper," which is considered an unskilled job requiring medium exertion. (Tr. at 80–81.) The ALJ asked the VE what work an individual could do, assuming the individual was limited to work that involved simple task instructions; at most occasional contact with supervisors, co-workers, and the public; no exposure to concentrated chemicals or pollutants; light work; and frequent, but not constant, fingering and handling. (Tr. at 82.) The VE stated that such an individual could not perform Plaintiff's past work, but that the individual could perform certain unskilled light work, such as garment sorter, warehouse checker, and mail clerk, all of which employ at least 17,000 people in the national economy. (Tr. at 82–84.) The VE testified that a person in these jobs could not be absent more than one day a month and maintain competitive employment. (Tr. at 85.) The VE also noted that there would be zero tolerance for absenteeism in the first 90 days,

although some employers would be more flexible if the employee was dependable during that probationary period. (Tr. at 85–86.)

On April 25, 2017, the ALJ determined that Plaintiff had the residual functional capacity to perform a range of light work, and thus was not disabled. (Tr. at 19, 23–24.) The ALJ found that Plaintiff's severe impairments included musculoskeletal issues, carpal tunnel syndrome, and depression. (Tr. at 17.) But the ALJ concluded that Plaintiff's impairments do not meet or medically equal the severity of the impairments that the Social Security Administration regulations treat as *per se* disabling. (Tr. at 18.)

Relying on the testimony of Dr. Ronald Kendrick, a medical expert who reviewed Plaintiff's voluminous records, and the reports of four consultative examiners who interviewed and examined Plaintiff, the ALJ determined that (1) Plaintiff's mental impairments result in only mild or moderate, not marked, limitations in her ability to manage herself, interact with others, and concentrate; (2) her mental impairments have not resulted in an episode of decompensation for an extended duration; and (3) despite Plaintiff's physical impairments, her medical records and examinations show that she has no limitations for sitting, standing, or walking, and has only mild to moderate physical or mental limitations on her ability to work. (Tr. at 18–23.) Finally, taking the VE's testimony into consideration, the ALJ found that given Plaintiff's residual functional capacity, she could perform jobs that exist in significant numbers in the national economy, such as garment sorter, warehouse checker, and mail clerk. (Tr. at 24.) Plaintiff appealed the ALJ's decision.

On February 20, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for review, rendering the ALJ's determination final. (Tr. 1–3.) Plaintiff filed her appeal to this Court on May 10, 2018. (Dkt. No. 2.) The Commissioner filed a motion for

judgment on the pleadings on November 30, 2018. (Dkt. No. 13.) After Plaintiff failed to oppose the Commissioner's motion in a timely fashion, the Court ordered Plaintiff on April 12, 2019, to file a response to the Commissioner's motion by May 13, 2019, or else the Court would treat the motion as unopposed. (Dkt. No. 15.) Plaintiff has not filed a response. The Court therefore treats the Commissioner's motion as unopposed.

## II. Legal Standards

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court may not substitute its judgment for the Commissioner's "even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)). This is because "substantial evidence" is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). Under this "very deferential" substantial-evidence standard, this Court may reject the ALJ's view of the facts "only if a reasonable factfinder would have to conclude otherwise." *Id.* (emphasis omitted) (second quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

"In the context of a Social Security benefits appeal, if a motion for judgment on the pleadings is unopposed, the Court may not grant the unopposed motion based merely upon the opposing party's failure to respond; rather, the Court 'must review the record and determine

whether the moving party has established that the undisputed facts entitle it to judgment as a matter of law.'" *Mitchell v. Berryhill*, No. 15 Civ. 6595, 2017 WL 2465175, at *6 (S.D.N.Y. June 7, 2017) (quoting *Martell v. Astrue*, No. 09 Civ. 1701, 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010)); *see generally Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (holding that in the summary judgment context, courts must review a motion, even if it is unopposed, before deciding that "the moving party is entitled to summary judgment as a matter of law" (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993))). Additionally, where a plaintiff proceeds *pro se*, courts must "afford his complaint 'special solicitude' and interpret it to raise 'the strongest claims that it suggests.'" *Ramos v. Astrue*, No. 11 Civ. 6204, 2012 WL 2358158, at *1 (E.D.N.Y. June 20, 2012) (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)) (brackets omitted).

### B. Framework for Disability Claims

To establish a disability under the Social Security Act, 42 U.S.C. § 301 *et seq.*, for the purposes of receiving disability insurance benefits or supplemental security income, a claimant must demonstrate, as relevant, an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). The impairment at issue must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A); *accord id.* § 1382c(a)(3)(B).

The Social Security Administration employs a five-step procedure to analyze disability determinations. The Commissioner considers whether: (1) the claimant is currently engaged in

6

substantial gainful activity; (2) the claimant has a "severe" impairment, as defined in the Social Security Administration's regulations; (3) the claimant's severe impairment is *per se* disabling under the regulations; (4) the claimant has the residual functional capacity ("RFC") to perform her past work; and (5) there is other work the claimant could perform. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at the first four steps; the Commissioner bears the burden at the final step. *Rosa*, 168 F.3d at 77. In conducting a disability analysis, the ALJ has an affirmative duty to "develop the record." *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).

## III. Discussion

In briefing the instant motion, the Commissioner has thoroughly explained the medical record on which the ALJ made his disability determination. (Dkt. No. 14 at 2–15.) The Commissioner argues that the record demonstrates that the ALJ's determination is supported by substantial evidence. (Dkt. No. 14 at 20–24.) After independent review of the record evidence, the Court agrees.

At the outset, the ALJ's determination that Plaintiff had an RFC that would permit her to perform a range of light work was supported by substantial evidence. The Second Circuit has held that an ALJ's determination need "not perfectly correspond with any of the opinions of medical sources cited in his decision," and that the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). The ALJ considered several sources in reaching his determination, all of which, taken together, provide substantial evidence for his RFC finding.

7

Consultative examiner Dr. Marilee Mescon, who interviewed and examined Plaintiff in 2013, found that Plaintiff had a full flexion in her cervical and lumbar spine and no abnormalities in her thoracic spine, and that Plaintiff also had a full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles. (Tr. at 556.) Another consultative examiner, Dr. Peter Graham, made similar findings in 2015, concluding that Plaintiff had "no limitations sitting, standing, and walking," but noting that her shoulder pain would impact her ability to use her right arm to reach for objects or to lift objects above her head. (Tr. at 647.) These findings provide substantial evidence for the ALJ's conclusion that Plaintiff is capable of satisfying the physical requirements of the work he deemed Plaintiff capable of performing. *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) (observing that "[t]he report of a consultative physician may constitute . . . substantial evidence."). Furthermore, Dr. Kendrick, an orthopedic surgeon who testified during the second hearing after reviewing the medical evidence, concluded that despite Plaintiff's impairments, Plaintiff could do light or sedentary work, and could finger and handle frequently, though not continuously. (Tr. at 137–142.)

In the same vein, the record supports the ALJ's finding that Plaintiff's mental impairments did not make her disabled. Consultative examiner Dr. Jean Brown, who examined Plaintiff in 2013, concluded that Plaintiff can follow and understand simple directions, and is mildly limited in her ability to maintain attention and concentration. (Tr. at 551.) Dr. Brown also concluded that Plaintiff can maintain a regular schedule and learn new tasks, and is only moderately limited in her ability to appropriately deal with stress. (*Id*.) Dr. Seth Sebold reached a similar conclusion after examining Plaintiff in 2015, though he differed as to Plaintiff's ability to deal with stress, concluding that she had marked limitations in this regard. (Tr. at 641.)

The ALJ, however, afforded less weight to Dr. Sebold's conclusion as to Plaintiff's ability to deal with stress after considering the full record, which was appropriate. *See, e.g., Ridosh v. Berryhill*, No. 16 Civ. 6466, 2018 WL 6171713, at *4 (W.D.N.Y. Nov. 26, 2018) ("The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.") (citing *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)); *Limpert v. Apfel*, No. 97 Civ. 3581, 1998 WL 812569, at *6 (E.D.N.Y. May 27, 1998) ("[W]hile an ALJ must give good reasons if he does not give a treating physician's opinion sufficient weight, there is no similar requirement for consulting physicians.") (citations omitted).

The medical records note that upon her boyfriend's sudden death in 2014, Plaintiff expressed suicidal thoughts to hospital staff and was subsequently hospitalized as a potential suicide risk. (Tr. at 736–48.) But the ALJ reasonably concluded that this did not support a finding of a marked limitation in dealing with stress as Plaintiff was faced with a unique circumstance, *i.e.*, the sudden death of her boyfriend, and had also reported that she was drinking a half a pint of liquor per day at the time. (Tr. at 22–23, 736, 742–43.)

Indeed, the balance of the mental health evidence suggests that her mental impairments, though real, are moderate. For example, providers have concluded that she was oriented to person, place, and time (Tr. at 603); had normal impulse control and cognition (Tr. at 860); was well groomed, well nourished, and had no acute distress (*id*.); and typically presented only as mildly depressed (Tr. at 456, 541, 546). The medical records also note that Plaintiff is compliant with psychiatric and medical treatment, and is pleasant, cooperative, motivated, well developed, and well nourished (Tr. at 564), which the ALJ concluded supported his RFC finding that Plaintiff is capable of simple task instruction work. (Tr. at 23). Ultimately, the Court defers to

9

the ALJ's resolution of the conflict between Dr. Sebold's finding and the complete record, *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."), and holds that there was substantial evidence indicating that Plaintiff remained capable of performing the sort of light work the ALJ identified notwithstanding her mental impairments.

In addition, substantial evidence supported the ALJ's conclusion that even though Plaintiff could not return to her past relevant work, Plaintiff had the RFC to perform other work that existed in significant numbers in the national economy. To reach his conclusion, the ALJ relied on testimony from VE DiTrinco. The ALJ asked the VE the types of jobs a hypothetical individual could do if they were limited to simple task instructions; occasional contact with supervisors, co-workers, and the public; no exposure to concentrated chemicals or pollutants; and light work with frequent, but not constant, fingering and handling. (Tr. at 82.) The VE testified that Plaintiff's previous occupation as a cook helper required medium exertion, meaning that it would not fall within her existing limitations (Tr. at 81), but that she could work as a garment sorter, a warehouse checker, and a mail clerk, all of which employed at least 17,000 workers in the national economy. (Tr. at 82–84.) The ALJ relied on this testimony in finding that Plaintiff could not perform her previous work, but could perform other jobs given her RFC, and that Plaintiff thus was not disabled. (Tr. at 24.)

Finally, the ALJ's hypothetical was appropriate because it was based on substantial evidence and accurately reflected the limitations of the Plaintiff. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009) (summary order) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant

involved." (citations omitted)). Here, the medical records indicated that Plaintiff had no limitations in sitting, standing, and walking (Tr. at 557, 647), and that she was compliant with her mental health treatment, was oriented to time and place, and had normal impulse control (Tr. at 563–64, 603, 860). In other words, she could follow simple instructions and engage in light work. Additionally, the ALJ considered Plaintiff's carpal tunnel as a limitation when he noted specifically for the VE that the jobs should not require more than frequent, as opposed to constant, fingering and handling. In light of the record, the ALJ did not err in providing a hypothetical to the VE and relying on the VE's testimony to support his disability determination.

## IV. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of Court is directed to close the motion at Docket Number 13 and to close this case.

SO ORDERED.

Dated: September 16, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*

11